UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| I. A. ALI, )<br>)<br>      Petitioner, )<br>)<br>                      v. )<br>)<br>JANET NAPOLITANO, as Secretary of the )<br>Department of Homeland Security, and JOHN )<br>MORTON, Director of U.S. Immigration & )<br>Customs Enforcement for the Boston District )<br>Office, )<br>)<br>      Respondents. )<br>) | Civil Action No.<br>12-11384-FDS |

**MEMORANDUM AND ORDER ON**
**PETITION FOR WRIT OF HABEAS CORPUS**

**SAYLOR, J.**

      This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and 8 U.S.C. § 1226. Petitioner I. A. Ali seeks habeas relief on the grounds that an Order of Supervision compelling him to make indefinite semi-annual appearances before the Immigration and Customs Enforcement office violates his constitutional rights to due process of law. For the reasons set forth below, the petition will be dismissed unless petitioner files an amended petition addressing the content of the Immigration Court's official 2001 decision.

**I.    Background**

      I. A. Ali is (apparently) a citizen of Somalia. He has resided in the United States since at least 2001. At some point—the record is unclear—the government instituted removal proceedings against him, and apparently he sought asylum. On July 16, 2001, an immigration

court granted Ali the relief of "withholding of removal." (Pet. for Writ ¶ 9).[1] The Immigration Judge's written order was essentially in the form of a filled-out checklist with handwritten notations. According to the original written version of that order, (1) Ali's application for asylum was denied; (2) his application for withholding of removal was granted; (3) his "CAT" application was withdrawn[2]; and (4) both he and the government waived their rights to an appeal. The original written order did not direct that Ali be removed, nor did it indicate a country to which he should be removed. In addition, the order stated:

> This is a summary of the oral decision entered on Jul[y] 16, 2001. This memorandum is solely for the convenience of the parties. If the proceedings should be appealed or reopened, the oral decision will become the official opinion in the case.

(Pet. for Writ, Ex. A at 2).

Four years then passed. Neither party provides a reason for the lengthy gap, or indicates whether Ali was subject to an order of supervision prior to 2005.

On July 15, 2005, Ali received an Order of Supervision. (Pet. for Writ ¶ 10). The Order of Supervision stated that Ali had been ordered removed on July 16, 2001. It then stated that "[b]ecause Immigration and Customs Enforcement (ICE) has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and be permitted to be at large under the following conditions." It then listed the conditions, as

---

[1] To be eligible for "withholding of removal," an "alien must show either that (i) he has suffered past persecution on account of a statutorily protected ground, thus 'creating a rebuttable presumption that he may suffer a future persecution' if repatriated, or (ii) that it is 'more likely than not that he will be persecuted on account of a protected ground upon his return to his native land.'" *Lopez-Castro v. Holder*, 577 F.3d 49, 52 (1st Cir. 2009).

[2] A "CAT" application is an application for relief under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681-761 (codified at 8 U.S.C. § 1231 (2000)). *Enwonwu v. Gonzales*, 232 Fed. Appx. 11, 12 (1st Cir. 2007).

follows:

>That you appear in person at the time and place specified, upon each and every request of ICE, for identification and for deportation of removal.
>
>That upon request of ICE, you appear for medical or psychiatric examination at the expense of the United States Government.
>
>That you provide information under oath about your nationality, circumstances, habits, associations, and activities and such other information as ICE considers appropriate.
>
>That you do not travel outside the <u>State of            </u> [*sic*] for more than 48 hours without first having notified this ICE office of the dates and places of such proposed travel.
>
>That you furnish written notice to this ICE office of any change of residence within 48 hours of such change.
>
>That you report in person on the <u>third business day of June + December</u> to this ICE office at: <u>Deportation Section</u> . . . unless you are granted written permission to report on another date.
>
>That you assist ICE in obtaining any necessary travel documents.
>
>That you not engage in employment not authorized by the Citizenship and Immigration Service (CIS).
>
>That you do not associate with known gang members, criminal associates, or be associated with any such activity.
>
>That you do not commit any crimes while on this Order of Supervision.
>
>That you continue to follow any prescribed doctor[']s orders whether medical or psychological including taking prescribed medications.
>
>That you provide ICE with written copies of requests to Embassies or Consulates requesting the issuance of a travel document.
>
>That you provide ICE with written responses from the Embassy or Consulate regarding your request.
>
>Any violation of the above conditions may result in revocation of your employment authorization document.

>Any violation of these conditions may result in you being taken into ICE custody and you being criminally prosecuted.
>
>That you not receive any form of public assistance.

(Pet. for Writ, Ex. B).

Pursuant to that order, Ali has reported, in person, to the ICE Office twice a year since 2005. (Resp.'s Opp. at 4). Seven more years then passed.

On July 28, 2012, Ali filed the present petition for a writ of habeas corpus. On August 30, 2012, the Department of Homeland Security filed a "Motion to Correct Voluntary Departure Order" with the Immigration Court. At that point, more than eleven years had passed since the original order. (Resp.'s Motion to Correct at 1-2).[3] That motion was granted on September 11, 2012.

The revised written order stated that (1) Ali "was ordered removed from the United States to Somalia"; (2) his application for asylum was denied; (3) his application for withholding of removal was granted (the order now included a handwritten notation, "removal to Somalia withheld"); (4) his "application for withholding of removal or deferral of removal under Article III of the Convention Against Torture" was withdrawn; and (5) he waived his right to appeal. (Pet. for Writ, Ex. A at 2). Again, the order stated that it was merely a summary of the order entered on July 16, 2001.

## II.   Analysis

Petitioner contends that the terms of the order violate his constitutional right to due process of law. The government has moved to dismiss his petition. It contends (1) that

---

[3] The timing of that motion appears to have been motivated by Ali's decision to file a petition for a writ of habeas corpus challenging the terms of the 2005 Order of Supervision, as the Department of Homeland Security filed the motion one month after Ali filed his petition in this Court.

petitioner is not eligible for habeas relief, as he is not in custody, and (2) that the terms of his order of supervision are lawful.

### A. Custody

The relevant statute, 28 U.S.C. § 2241(c)(3), provides federal district courts with jurisdiction to entertain petitions for habeas relief from persons who are "in custody in violation of the Constitution or laws or treaties of the United States." The custody requirement "is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty." *U.S. ex rel. Bailey v. U.S. Commanding Officer of Office of Provost Marshal, U.S. Army*, 496 F.2d 324, 325-26 (1st Cir. 1974) (citing *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973) (internal quotation marks omitted)). To satisfy the custody requirement, a petitioner "must be subject to restraints 'not shared by the public generally.'" *Hensley*, 411 U.S. at 351-53 (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1962)) (noting that the obligation to appear "at all times and places as ordered" by "[a]ny court or magistrate of competent jurisdiction" satisfies the custody requirement).

The law is clear that circumstances short of incarceration may constitute sufficient "custody" to warrant habeas review. The Supreme Court has deemed the "custody" requirement satisfied where a petitioner was on parole, *Jones v. Cunningham*, 371 U.S. 236, 243 (1962), released on bail awaiting trial, *Hensley*, 411 U.S. 345 (1973), or on military reserve status, *Strait v. Laird*, 406 U.S. 341, 345-46 (1972).

Respondent contends that an order of supervision is not a sufficient restraint to satisfy the "custody" requirement. In so arguing, respondent relies heavily on *Parinejad v. ICE*, 501 F. Supp. 2d 280, 283 (D. Mass. 2007). Respondent contends that *Parinejad* stands for the

proposition that, if a petitioner is not physically detained, habeas corpus is not an available remedy. (Resp. Opp. at 2). However, the reasoning of *Parinejad* does not apply to the present case.

In *Parinejad*, the court addressed a putative class action suit brought by a detained immigrant, Sassan Parinejad, and two organizational petitioners—Political Asylum/Immigration Representation Project (PAIR) and the Catholic Legal Immigration Network, Inc. (CLINIC). Petitioners sought habeas relief to compel Parinejad's release from the custody of ICE. *See Parinejad*, 501 F. Supp. 2d at 281-82. Before the court could decide the merits of the habeas petition, Parinejad filed a motion to dismiss, stating that he had been released from custody. *See id.* The two organizational petitioners attempted to maintain the petition without Parinejad on the basis of the third-party habeas rule. The court dismissed the action for lack of standing, finding that "[t]he purpose of the Great Writ is to compel the production of the 'body' of a person unlawfully detained. If the body is free, there is nothing to compel." *Id.* at 283.

As petitioner notes, there is no suggestion in that case that any restrictions were placed upon Parinejad subsequent to his release. (Pet. Reply Br. at 2). In contrast, Ali—the sole petitioner here—has been compelled since 2005 to report twice a year to the ICE Office. (Resp.'s Opp. Br. at 4). Among other requirements, petitioner must provide ICE with written notice of any change of residence, limit his contact with certain individuals, and appear in person "upon each and every request of ICE." (Doc. 1 Ex. B). Failure to comply with any of the conditions listed in the Order of Supervision could result in his detention and criminal prosecution. (Pet. for Writ, Ex. B). Accordingly, *Parinejad* does not control.

Respondent cites *Zadvydas v. Davis*, 533 U.S. 678 (2001), for the proposition that habeas

relief "extends *solely* to release from physical detention." However, that case established no such rule. In *Zadvydas*, the Court held that aliens who were admitted to the United States but subsequently ordered removed could not be detained indefinitely beyond the removal period. It did not address the question of what conditions, short of detention, might constitute "custody," and does not stand for the proposition that habeas relief is only available for those subject to physical detention.

Respondent also cites to a number of other cases in which courts have found that an alien's habeas challenge was rendered moot by the alien's release from custody under an order of supervision. However, in all of those cases, the petition as initially filed was based upon a challenge to the detention itself. Those cases do not address the bounds of "custody" under §2241; nor do they address the circumstance presented here, in which the petition does not challenge an ongoing physical detention, but rather challenges the terms of an order of supervision. Thus, the cases cited by respondent are inapposite.

Neither party has cited, and this Court has not found, any case in the immigration context in which a federal court has directly ruled on the question presently before this Court. The Court is, instead, guided by cases involving similar conditions of supervision in the criminal context. *See, e.g., Arias v. Rogers*, 676 F.2d 1139, 1142 (7th Cir. 1982) (applying interpretations of the habeas statute from the criminal context to the immigration context); *Tiv v. Reno*, 2000 U.S. Dist. LEXIS 2170 (N.D. Ill. Feb. 23, 2000) (same). In *Hensley,* the Supreme Court addressed a petitioner who was convicted of a misdemeanor and released on his own recognizance. The terms of his release required that petitioner appear "at all times and places as ordered" by "any court or magistrate of competent jurisdiction." *Hensley*, 411 U.S. at 348. The Court determined

that petitioner was unable to "come and go as he pleases." *Id.* at 351.  Moreover, disobedience itself was a criminal offense.  *Id*.  Petitioner remained at large only because the execution of his sentence had been stayed, and authorities "retain[ed] the determination and the power to seize him as soon as the obstacle of a stay [was] removed."  *Id.* at 347, 351-52.   As a result, the Court held that petitioner was in "custody" for purposes of the habeas corpus statute.

Similarly, in *Jones v. Cunningham,* 371 U.S. 236 (1963), the Supreme Court found that petitioner, a former prisoner placed on parole, was still in "custody" under his unexpired sentence.  In support of its holding, the Court cited to the facts that the petitioner's release from physical confinement was not unconditional; that petitioner was explicitly required to regularly report to his parole officer; that he was required to remain in a particular community, residence, and job; and that he was required to refrain from certain activities.  *Id.*, 371 U.S. at 242.

Although the restraints on petitioner's freedom are not identical to those imposed on petitioners in *Hensley* and *Jones*, the restraints are not so different as to require a different result.  While petitioner is "free" in the sense that he is not behind prison walls, he is subject to control over where and when he can travel, where he can reside, with whom he can associate, what information he may keep confidential, and the type of employment in which he can engage.  (Pet. for Writ, Ex. B).  Accordingly, petitioner's liberty is burdened by many of the same restrictions as encountered by petitioners in *Hensley* and *Jones*.

Physical detention is not the only restraint on liberty sufficient to trigger the "custody" bar required to invoke the writ of habeas corpus.  Although the writ of habeas corpus has, as recognized in *Lehman v. Lycoming Cnty. Children's Servs. Agency* 458 U.S. 502, 510 (1982)*,* certainly never been considered a "generally available federal remedy for every violation of

federal rights," the restraints placed upon petitioner's liberty, restraints not shared by the public generally, are substantially similar to those restraints identified in the criminal context warranting a "custody" finding. As a result, this Court finds that petitioner was in "custody" pursuant to 28 U.S.C. § 2241(c)(3).

### B.    Challenge to Conditions of Supervised Release

Petitioner contends that the requirement that he report to the ICE office indefinitely is an unlawful restriction on his liberty and a violation of his right to due process of law. (Pet. for Writ, ¶ 12). He challenges the validity of the 2005 Order of Supervision on the basis that the Immigration Court's 2001 decision did not include an order of removal. (Pet. for Writ, ¶¶ 9-12). Petitioner states that the 2001 order became final after both parties waived the right to appeal, and contends that the Immigration Judge violated his due process rights by granting the government's "Motion to Correct Voluntary Departure Order."[4] He contends that the Immigration Judge could not lawfully modify the terms of the earlier decision to include an order of removal, and thus the modified order cannot provide authority for the Order of Supervision.

The government contends that petitioner is properly subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), which states that an alien subject to a final order of removal who is released from custody "shall be subject to supervision under regulations prescribed by the Attorney General . . . ." The statute further mandates that such supervision will include the requirement that the alien "appear before an immigration officer periodically for identification." *Id.*

This case appears to turn on the terms of the Immigration Judge's 2001 order, and the

---

[4] Petitioner contends that the title of this motion is inaccurate because petitioner was never issued a voluntary departure order.

validity of the 2012 "correction" to that order.  Petitioner contends that the Immigration Judge's final decision in 2001 granted him a withholding of removal, without any predicate order of removal or country of removal, and was thus unlawful.

It would seem that a "withholding of removal" necessarily requires a predicate order of removal, or an order providing for the withholding of that removal makes no sense.  The Court, however, does not need to reach that issue.  Petitioner has not alleged, let alone established, that the 2012 order actually altered the 2001 decision by granting respondent's 2012 "Motion to Correct."  The written 2001 "Order of the Immigration Judge" explicitly states that the "memorandum is solely for the convenience of the parties," and that the oral decision is the "official opinion in the case."  (Pet. for Writ, Ex. A).  Petitioner does not anywhere allege that the order of removal to Somalia was not included in the original oral decision.  Thus, petitioner provides no indication that the 2012 Immigration Order did anything more than alter the written order of the 2001 decision to better reflect the official, oral decision.  Hence, petitioner fails to show that the order of the Immigration Judge as written in 2012 in any way altered the actual official decision in his case.

The burden of proof on a habeas petitioner in district court is the civil burden of a preponderance of the evidence.  *Haller v. Robbins*, 409 F.2d 857, 860 (1st Cir. 1969).  Because petitioner failed to allege that the official (oral) decision did not order him removed to Somalia, he cannot demonstrate on the present record that the 2012 order altered the official decision in his case.  The Court accordingly finds that petitioner has failed to establish a denial of his constitutional rights arising from the 2005 Order of Supervision.  Because, however, the nature of the actual order is unknown, petitioner will be given an opportunity to amend the petition to

provide the complete content of the 2001 order.

### III.     Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus will be dismissed unless, within 30 days of the date of this Order, petitioner files an amended petition addressing the complete content of the July 16, 2001 order of the Immigration Court in a manner consistent with this opinion.

**So Ordered.**

                                            /s/ F. Dennis Saylor
                                            F. Dennis Saylor IV
                                            United States District Judge

Dated: July 26, 2013